No. 18-1982

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

**VANESSA MATHEWS, et. al.**

Plaintiffs-Appellants

- VS. -

REV RECREATION GROUP, INC.

Defendant-Appellee

Appeal From The United States District Court
For the Northern District of Indiana;
Fort Wayne Division
Case No. 1:15-cv-00247
The Honorable Judge William C. Lee

# REPLY BRIEF OF PLAINTIFFS-APPELLANTS, VANESSA AND RANDAL MATHEWS

ELIZABETH AHERN WELLS
BURDGE LAW OFFICE Co., LPA
Attorney for Plaintiffs-Appellants
Vanessa and Randal Mathews
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone: 937.432.9500

**Table of Contents**


| | | Page |
|---|---|---|
| I. | Response to Statement of Facts | 1 |
| II. | Response to Summary of the Argument | 4 |
| III. | Argument | 4 |
| | A. Reasonable minds could conclude that REV breached its express warranties under state law | 5 |
| | B. Reasonable minds could conclude that REV breached its implied warranties under state law | 16 |
| | C. Reasonable minds could conclude that REV breached its express and implied warranties under the Magnuson Moss Warranty Act | 17 |
| | D. Reasonable minds could conclude that the Mathews were not required to avail themselves of the back-up remedy in REV's Limited Warranty | 18 |
| | E. Reasonable minds could conclude that REV violated the Indiana, Virginia, or Pennsylvania UDAP laws | 20 |
| IV. | Conclusion | 23 |
| Certificate of Compliance | | 24 |
| Certificate of Service | | 25 |

**Table of Authorities**

Page

**CASES**

*Auto-Teria, Inc. v. Ahern*, 170 Ind. App. 84, 352 N.E.2d 774 (Ind. Ct. App. 1976). . . . . 12
*Ballagh v. Fauber Enters.*, 290 Va. 120 (Va. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Bob Anderson Pontiac, Inc. v. Davidson*, 155 Ind. App. 395, 293 N.E.2d 232 (Ind. Ct. App. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2nd Cir. 1996). . . . . . . . . . . . . . . . . . . 13
*Carpetland USA v Payne*, 536 N.E.2d 306 (Ind. Ct. App. 1989). . . . . . . . . . . . . . . . . . . . 15
*Charlie Stuart Oldsmobile, Inc. v. Smith*, 171 Ind. App. 315 (Ind. Ct. App. 1976). . . . . . 15
*Cimino v. Fleetwood Enterprises, Inc.*, 542 F.Supp.2d 869 (N.D. Ind. 2008). . . . . . 8, 18
*Coachmen Indus. v. Kemlite*, 2008 U.S. Dist. LEXIS 91349 (N.D. Ind. 2010). . . . . . . . 13
*Don Medow Motors, Inc. v. Grauman*, 446 N.E.2d 651 (Ind. Ct. App. 1983). . . . . . . . . 15
*Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
*Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780 (Ill. App. 2001). . . . . . . . . . . . . . . *9*
*Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327 (Ind. 2013). . . . . . . . . . . . . . . . . . . . . . . *22*
*Larry J. Soldinger Assocs. v. Aston Martin Lagonda of N. Am., Inc.*, 1999 U.S. Dist. LEXIS 14765 (N.D. Ill. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
*McCauley v. Nucor Corp.,* 2007 U.S. Dist. LEXIS 58455 (S.D. Ind. 2017). . . . . . . . . . . *14*
*McKinney v. State*, 693 N.E.2d 65 (Ind. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*
*MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
*M.W. v. State*, 2008 Ind. App. Unpub. LEXIS 2468 (Ind. Ct. App. 2008).. . . . . . . . . . . 15
*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (Ct. App. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*
*Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634 (Ind. Ct. App. 2004). . . . . . . . *8, 18, 22*
*Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. Appx. 267 (4th Cir. 2006). . . . . *14*
*Pizel v. Monaco Coach Corp.*, 2005 U.S. Dist. LEXIS 15905 (N.D. Ind. 2005). . . . . . . . 11
*Polyzen, Inc. v. Radiadyne, LLC*, 2016 U.S. Dist. LEXIS 130888 (E.D.N.C. 2016).. . . . *14*
*Popham v. Keystone*, 2016 U.S. Dist. LEXIS 127093. . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
*Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 U.S. Dist. LEXIS 147633 (E.D.N.C. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, 2010 U.S. Dist. LEXIS 103405 (N.D. Ind. 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*
*Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137 (4th Cir. 1994). . . . . . . . . . . . . 15
*Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y. 2d 398 (1968). . . . . . . . . . . . . *6*
*Winter v. Minnesota Mut. Life Ins. Co.*, 199 F.3d 399 (7th Cir. 1999). . . . . . . . . . . . . . . 19

**STATUTES**

I.C. 24-5-0.5-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
I.C. 24-5-0.5-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
I.C. 26-1-2-714. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
I.C. 26-1-2-719. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14, 18, 19
73 Pa. Stat. § 201-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

73 Pa. Stat. § 201-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Va. Code § 59.1-198. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Va. Code § 59.1-200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Va. Code § 59.1-200.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I. Statement of Facts

In its statement of facts, Defendant REV claims that there are no issues of material fact. See Brief of Appellee, pg 2. However, throughout its statement of facts, REV either misstates material facts or leaves out material facts, making clear that the exact opposite is true.

First, when discussing the Mathews' first trip at page 3, ¶4 of its brief, Defendant states that the Mathews did not report the issues they experienced to REV on the first trip. However, Mr. Mathews immediately called REV's authorized dealer, Mellott Brothers Trailer Sales, Inc., and with the service manager John's help he determined that the converter was blowing fuses. Aff. R. Mathews, ¶5 (Doc. 37-1; Appx. P51-52). John suggested that Mr. Mathews go to an auto parts store, replace the fuses, and keep an eye on it, so that is what Mr. Mathews did. *Id*. This is the very first step to obtaining service which is outlined in the REV warranty itself. Warranty (Doc. 37-4; Appx. P48).

Second, at page 3,¶5 of its brief, Defendant outlines additional problems which occurred as the weekend of that first trip continued, but leaves out half of the problems that the Mathews experienced. Instead, as the weekend went on, the Mathews also noticed the following problems not mentioned in REV's brief: the DVD player would not work, and condensation from the refrigerator would run across the floor. Aff. R. Mathews, ¶5 (Doc. 37-1; Appx. P51-52).

Third, REV claims at page 4 of its brief that the Mathews never notified REV that the RV was at Johnson's RV or that repairs were being performed. However, REV was aware that the RV was going to a local shop near the Mathews for repairs and Angela at REV instructed Mr. Mathews to tell the repair shop to contact REV for authorization,

which Mr. Mathews did. Aff. R. Mathews, ¶7 (Doc. 37-1; Appx. P51-52). In fact, Johnson's RV told the Mathews that the repair was covered under the REV warranty and that Johnson's RV had been in contact with REV regarding the repairs Aff. R. Mathews, ¶8 (Doc. 37-1; Appx. P52). Unbeknownst to the Mathews, however, Johnson's RV apparently never ultimately obtained warranty approval from REV.

Fourth, REV completely left out the defects that the Mathews experienced during the Halloween Weekend trip. On October 31, 2014, the Mathews went to Travel-L-Park for their Halloween Weekend celebration. Aff. R. Mathews, ¶10 (Doc. 37-1; Appx. P53). Unfortunately, the problems continued: the CO2 alarm was going off, the refrigerator latch was falling off, the bedroom closet door was falling apart, and the subwoofer came unscrewed from its brackets. *Id.*

Fifth, at pages 5-6 of its brief, REV lists the defects which were subject to repair at the REV factory from December 14, 2014 through December 19, 2014. However, REV leaves out the following material defects from the list: converter won't power up, entry door sprung at bottom corner, and right side living room slide area doesn't go out due to low voltage. Repair Order (Doc. 37-8); Aff. R. Mathews, ¶12 (Doc. 37-1; Appx. P53-54).

Sixth, at page 6 of its brief, REV claims that each of the defects presented for repair at the REV factory in December 2014 were repaired. However, this is not true. Instead, the following defects were subject to repair at the REV factory in December 2014 and were never fixed: DVD player does not work, bedroom TV not working, and seals coming loose on curb side slide out. Aff. R. Mathews, ¶20 (Doc. 37-1; Appx. P55-56); Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A).

Seventh, at page 6 of its brief, REV claims that the two warranty extensions

provided by REV were not warranty extensions at all, but instead "goodwill gestures". However, this is not true. Instead, REV actually orally agreed to extend the warranty itself twice during two separate telephone conversations with Mr. Mathews. Aff. R. Mathews, ¶11, 15 (Doc. 37-1; Appx. P53, 55).

Eighth, REV claims at page 6 of its brief, that the May 2015 factory repair was the first time that it was presented with an issue related to the curb side slide cable. However, it was the second time that it attempted to repair the curb side slide out itself. Repair Order (Doc. 37-8); Aff. R. Mathews, ¶12 (Doc. 37-1; Appx. P53-54).

Ninth, at page 6 of its brief, REV lists three (3) defects which were subject to repair during the May 2015 factory repair, but leaves out one material defect– the entry door was buckled and was subject to repair on that trip, too. Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶17 (Doc. 37-1; Appx. P55).

Tenth, at page 7 of its brief, REV makes it appear as though the Mathews never made any attempts to resolve their dispute with REV and immediately filed a lawsuit. That is simply not true. Instead, just days after the May 2015 factory repair, on July 1, 2015, the bedroom slide out cable broke again. Aff. R. Mathews, ¶18 (Doc. 37-1; Appx. P55). About a week later, on July 13, 2015, the Mathews attorney sent a letter to REV, on the Mathews behalf, advising REV of the RV's many problems and failed repair attempts, and REV's breach of warranty. Letter from Burdge (Doc. 30-9). There is no evidence that REV ever responded to the letter. The Mathews then filed suit on September 4, 2015. Complaint (Doc. 1, Short Record pg 2).

Eleventh, at page 7 of its brief, REV lists 7 defects which are unrepaired. However, REV leaves out one material defect– the slide out seals are still failing and

coming loose. Aff. R. Mathews, ¶20 (Doc. 37-1; Appx. P55-56); Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A).

Twelfth, REV leaves out one major set of disputed facts– the Mathews' expert's opinions regarding the reasonableness of repairs and the merchantability of the RV at the time of delivery and at the time of inspection. See Defect Report (Doc. 37-13, Ex. 2A); Valuation Report (Doc. 37-13, Ex. 2B); Thermography Report (Doc. 37-13, Ex. 2C); Certified Time Lapse Temperature Investigation Report (Doc. 37-13, Ex. 2D); Rebuttal Report (Doc. 37-13, Ex. 2E). These expert opinions are the only expert opinions before the District Court on REV's motion.

## II. Summary of the Argument

In its Summary of the Argument, REV claims that the Mathews "chose to deal with many issues outside of the Limited Warranty without notifying REV". See Brief of Appellee, pg 10. This is simply not the case. Mr. Mathews contacted REV by telephone twice regarding the defects in the RV and finding a local dealer near him to repair the RV under the REV warranty. Aff. R. Mathews, ¶7 (Doc. 37-1; Appx. P51-52). He followed the steps that Angela from REV gave him to obtain warranty service closer to home, and was advised by the local repair shop that REV had approved the repairs and that the repairs were being done under the REV warranty. Aff. R. Mathews, ¶7-8 (Doc. 37-1; Appx. P52-53). The Mathews were unaware that the local repair shop never ultimately submitted the repairs for reimbursement to REV.

## III. Argument

The Mathews' response to the arguments made by REV as to each claim and issue, are addressed below in order, and arranged by topic.

A. Reasonable minds could conclude that REV breached its express warranties under state law

First, in its argument regarding breach of express warranty, at pages 14 and 15 of its brief, REV claims that it "remedied all issues Mathews presented during the warranty period and repaired those issues within a reasonable amount of time and a reasonable number of repair attempts." Neither is true. First, REV attempted to repair the following defects at its factory, and none of them were ever repaired: DVD player does not work (December 2014), bedroom TV not working (December 2014), slide out seals coming loose and failing (December 2014 and May 2015), and A/C not keeping up (May 2015). Repair Order (Doc. 37-8); Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶12, 17, 20 (Doc. 37-1; Appx. P53-54, 55, 56); Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A). Second, REV failed to submit absolutely any evidence that it performed repairs within a reasonable amount of time or within a reasonable number of attempts. The only expert opinions on that issue were in the negative and were submitted by the Mathews.

Second, at page 15 of its brief, REV again lists 7 defects which are unrepaired. However, REV again leaves out one material defect– the slide out seals are still failing and coming loose. Aff. R. Mathews, ¶20 (Doc. 37-1; Appx. P55-56); Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A). Then at page 16 of its brief, REV twists the language of the Mathews' brief around to make it appear that they are claiming that only 3 defects are unrepaired. However, that is certainly not the case.

Third, at footnote 2 on page 16, REV claims that that the Mathews operated outside of the warranty in having repairs performed at Johnson's RV. Again, this is simply not the case. Mr. Mathews followed the steps that Angela from REV gave him to

obtain warranty service closer to home, and was advised by the local repair shop that REV had approved the repairs and that the repairs were being done under the REV warranty. Aff. R. Mathews, ¶7-8 (Doc. 37-1; Appx. P52-53). The Mathews were unaware that the local repair shop never ultimately submitted the repairs for reimbursement to REV.

Fourth, at pages 17-18 of its brief, REV summarily claims that certain defects "cannot form a basis for a breach of warranty" and were repaired within a reasonable amount of time or a reasonable number of repair attempts. The Mathews disagree, as outlined in detail in the breach of warranty section of their merit brief. With regards to the A/C failing to keep up and the failing seals however, it should be noted that the A/C failing to keep up is caused by the failing seals, which were subject to repair by REV at its factory in December 2014 and May 2015. Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A); Repair Order (Doc. 37-8); Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶12, 17, 20 (Doc. 37-1; Appx. P53-54, 55, 56).

Fifth, at pages 18-20 of its brief, REV argues that a latent defect cannot be the basis of a breach of express warranty claim, citing *Popham v. Keystone*, 2016 U.S. Dist. LEXIS 127093. However, as outlined below, *Popham* can be distinguished.

Where a defect is a latent one, a clause setting a short time-limit on remedies can be declared unconscionable and unenforceable where the defect is not discoverable until after the warranty term has lapsed, allowing recovery for breach of express warranty. *Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y. 2d 398, 403 (1968).

In *Popham*, the latent defect was a roof defect that was discovered 10 months after expiration of the express warranty. The District Court held that the 1 year warranty

was not *per se* unconscionable. The District Court admitted that it is a question of fact as to whether it was reasonable to require a purchaser to detect a latent defect within the warranty time period. *Id.* at *20. However, in that case, the plaintiffs provided absolutely no expert testimony establishing that the defect in the roof was latent and present at the time of purchase, and the evidence established that the manufacturer timely remedied all issues under the warranty. *Id.* So the District Court determined that the duration of the warranty was not unreasonable and the latent roof defect could not establish a breach of warranty.

Here, however, the opposite is true and reasonable minds could conclude that the 1 year warranty at issue was unreasonable, unconscionable and unenforceable. In fact, the Mathews' expert witness, Mr. Bailey, determined that the fresh water tank support system installed by REV was insufficient to hold the weight of the 836 pound water tank, causing the support beams and the tank itself to bow downward six inches, the kitchen island cabinet directly above the water tank to fracture and lean forward, and the floor structure directly above the water tank to fail and bow downward. Depo. Bailey, P50 L11-20; P58 L7-21; P69 L15-P70, L12 (Doc. 37-13, Ex. 16); Defect Report, P6 (Doc. 37-13, Ex. 2A). And, the Mathews did not discover the latent defect until after expiration of the warranty. Aff. R. Mathews, ¶19 (Doc. 37-1; Appx. P55). Moreover, as outlined in the Mathews' initial brief, REV failed to timely repair the RV's issues under its warranty. Therefore, *Popham* can be distinguished from this case and reasonable minds could conclude that the latent water tank defect resulted in a breach of REV's express warranty.

Therefore, reasonable minds could conclude that the latent water tank defect here

can be the basis of a breach of express warranty.

Sixth, at pages 20-24 of its brief, REV attempts to create a bright line rule where none exists as to what constitutes a reasonable number of repair attempts. Specifically, REV argues that two failed repair attempts cannot be unreasonable as a matter of law. However, this is simply not the case.

First, the Federal Trade Commission has not addressed the issue of how many repair attempts is unreasonable. *Larry J. Soldinger Assocs. v. Aston Martin Lagonda of N. Am., Inc.*, 1999 U.S. Dist. LEXIS 14765, *14-15 (N.D. Ill. 1999). As such, this determination will be made by “the parties or, ultimately, a third party (arbiter or judge) would decide." *Id.* Therefore, the court has discretion to determine the meaning of "reasonable number of attempts" within the context of any particular case before it. *Id.* In other words, there is no bright line rule and two failed repair attempts may be unreasonable in one case, but reasonable in another.

Second, this argument completely ignores that a warranty can be breached where it fails of its essential purpose. Where circumstances cause a warranty to fail of its essential purpose, the warranty can be breached. I.C. 26-1-2-719(2). A warranty fails of its essential purpose where application of the remedy will not further the purpose of the warranty itself. *Cimino v. Fleetwood Enterprises, Inc.*, 542 F.Supp.2d 869, 887 (N.D. Ind. 2008); *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 642-643 (Ind. Ct. App. 2004). And, when a warrantor does not repair defects within a reasonable time, the warranty can fail of its essential purpose. *Id.* Therefore, even one repair attempt, if the duration is unreasonably long, can be unreasonable where the warranty fails of its essential purpose.

Therefore, what constitutes a reasonable repair attempt depends on the specific facts in each and every case, and there is no bright line rule.

Seventh, at page 23 of its brief, REV claims that it had no obligation to repair the bedroom TV or the DVD player. However, the warranty does not specifically exclude either component nor has REV submitted any evidence that either one is covered by its own manufacturer's warranty. See Warranty (Doc. 37-4; Appx. P48).

Eighth, at page 24 of its brief, REV claims that it only had one opportunity to repair the A/C failing to keep up. Again, it should be noted that the A/C failing to keep up is caused by the failing seals, which were subject to repair by REV at its factory in December 2014 and May 2015. Defect Report, P4-6, 22 (Doc. 37-13, Ex. 2A); Repair Order (Doc. 37-8); Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶12, 17, 20 (Doc. 37-1; Appx. P53-54, 55, 56).

Tenth, at pages 25-27 of its brief, REV argues that the water tank defect cannot form the basis of a breach of warranty because it is a design defect. However, repair of the defective water tank support system, and resulting damage to the kitchen island cabinet and the now sagging RV floor, is covered by REV's warranty. In fact, under the terms of REV's warranty, the defect and resulting damage are covered by the warranty because the water tank support system presumably was not designed to fail.

Since express warranties are contractual in nature, the language of the warranty itself is what controls and dictates the obligations and rights of the various parties. *Hasek v. DaimlerChrysler Corp.*, 319 Ill. App. 3d 780, 788 (Ill. App. 2001). The language of the REV warranty provides for warranty coverage of the defective water tank support system, and resulting damage. Defendant's warranty covers:

> those components, assemblies and systems of your new towable product not excluded under the section "What The Warranty Does Not Cover"...

Warranty (Doc. 37-4; Appx. P49). Under the section "What The Warranty Does Not Cover", REV excludes from warranty coverage:

> items that are working as designed but which you are unhappy with because of the design...

Warranty (Doc. 37-4; Appx. P49). And, when the water tank support system failed, it was certainly not "working as designed".

Here, it is Mr. Bailey's opinion that the water tank support system installed by REV was insufficient to hold the weight of the 836 pound water tank, causing the water tank and support beams to bow downward six inches, the kitchen island cabinet directly above the water tank to fracture and lean forward, and the floor structure directly above the water tank to fail and bow downward. Depo. Bailey, P50 L11-20; P58 L7-21; P69 L15-P70 L12 (Doc. 37-13, Ex. 16); Defect Report, P4-6 (Doc. 37-13, Ex. 2A). Certainly, the water tank support system was not designed to fail, or to cause the kitchen island and floor structure directly above the water tank to fracture and fail. As such, the repair of the defective water tank support system and resulting damage is covered by the terms of REV's warranty.

Notwithstanding, REV cites only three cases which it claims support its argument. However, in each and every one of the cases cited, the warranty at issue covered only defects in "material and workmanship" and not defects in design. Here, on the other hand, the warranty at issue is considerably more broad, covering all "components, assemblies and systems" not specifically excluded. Warranty (Doc. 37-4; Appx. P49). And, since the water tank support system was not working as designed

when it failed, the particular defect here is not excluded from coverage.

Eleventh, at pages 27-31 of its brief, REV argues that Mr. Bailey's expert opinions regarding damages fail because they are not itemized by defect and are not reliable or relevant. However, while it is true that the Mathews must prove their damages as an element of their breach of warranty claims, Mr. Bailey's, Ms. Matthews' and Mr. Matthews' opinions regarding the amount of damages for breach of warranty are all acceptable methods for calculating damages for breach of warranty under Indiana law.

The measure of damages for a breach of warranty under Indiana law is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. *Pizel v. Monaco Coach Corp.*, 2005 U.S. Dist. LEXIS 15905, *7-10 (N.D. Ind. 2005)(citing I.C. 26-1-2-714(2)). This method for calculating damages describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty, but it is not intended as an exclusive measure. *Id.* at *7-10 (citing Comment to I.C. 26-1-2-714(2)). Three alternative methods for calculating damages are: (1) the cost of repair; (2) the fair market value of the goods as warranted less the salvage value of the goods; and, (3) the fair market value of the goods as warranted at the time of acceptance less the fair market value of the goods as received at the time of acceptance. *Id.*

Here, it is Mr. Bailey's opinion that the estimated cost to repair the fresh water

tank related defects,[1] the curb side slide out related defects,[2] and the insufficient roof insulation is $40,800.00. Defect Report, p. 14, 4-6 (Doc. 37-13, Ex. 2A). Mr. Bailey explained that, based upon his inspection of the RV and upon his relevant education, knowledge and experience in the industry, this estimated cost of repair was based upon 200 hours of work, a reasonable hourly rate of $125.00 per hour, material costs of $6,000.00, engineering costs of $3,000.00, and a 20% increase of that total for hidden issues that can be the result of the known issues. Depo. Bailey, P 78 L 21-25; P 81 L18-25; P 82 L 1 -7; P 83 L 21 - P 84 L22; P 85 L 15 - P 86 L20 (Doc. 37-16); Defect Report, p. 14, 4-6 (Doc. 37-13, Ex. 2A).

It is also Mr. Bailey's opinion that the subject RV's diminished value (i.e. the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted) is $78,100.00. Valuation Report, p. 29 (Doc. 37-13, Ex. 2B).

While it is true that the Mathews must prove their damages as an element of their breach of warranty claims, Indiana law does not require breach of warranty damages to be proven by mathematical precision. See *Auto-Teria, Inc. v. Ahern*, 170 Ind. App. 84, 97, 352 N.E.2d 774, 783 (Ind. Ct. App. 1976); *Bob Anderson Pontiac, Inc. v. Davidson,* 155 Ind. App. 395, 404, 293 N.E.2d 232, 237 (Ind. Ct. App. 1973).

Furthermore, the degree of certainty in which an opinion or conclusion is expressed concerns the weight to be accorded to the testimony, which is a matter for the

[1] The fresh water tank defects Mr. Bailey identifies are: the location of the fresh water tank, the floor above the tank, and the kitchen island cabinets on that flooring.

[2] The curb side slide out defects Mr. Bailey identifies are: the improper fit of the slide out, resulting improper seal, exposure to the elements, and loss of interior energy.

jury to resolve and not the Court. *Coachmen Indus. v. Kemlite*, 2008 U.S. Dist. LEXIS 91349, *48 (N.D. Ind. 2010).

Notwithstanding, REV cites 6 cases in support of its argument that Mr. Bailey's opinions are unreliable because they "assume that REV is liable for all defects he identified." However, each of the 6 cases cited by Defendant are distinguishable from the instant case.

First, the cases cited by Defendant are distinguishable as they involve damage calculations for lost profits and/or lost sales - not damages for breach of warranty in a defective goods case like we have here. Where lost future earnings are at issue, an expert's testimony should be excluded if it is based on unrealistic assumptions regarding plaintiff's future job prospects. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2nd Cir. 1996). On the other hand, Indiana law does not require breach of warranty damages to be proven by mathematical precision. See *Auto-Tenia*, 170 Ind. App. at 97; *Bob Anderson Pontiac*, 155 Ind. App. at 404. Simply put, REV is comparing apples to oranges.

Second, the instant case is distinguishable from the cases cited by REV because Mr. Bailey's damages opinions are not based on any false assumption or speculation of the facts. Here, Mr. Bailey made no false or unrealistic assumptions in reaching his opinions. Instead, he actually based his opinions on the existence of 13 separate defects which he verified during his inspection of the RV as being problematic. In fact, on page 25 of his report, Mr. Bailey states "The inspection and evaluation conclusion is purely based upon the visible evidence as seen by the appraiser at the time of inspection."

Moreover, even if Mr. Bailey's opinions were based upon false assumptions or

speculations of fact, which they are not, a court need not exclude expert opinions based upon false assumptions or speculation of facts where the remaining facts may still *possibly support* the expert opinions, as they would here. *McCauley v. Nucor Corp.,* 2007 U.S. Dist. LEXIS 58455, * 11 (S.D. Ind. 2017). And, as REV's warranty has failed of its essential purpose, itemizing each damage figure would be an exercise in futility since all defects would be relevant to the Mathews' damages. I.C. 26-1-2-719(2). As such, REV simply cannot prove that the facts *cannot possibly support* Mr. Bailey's opinions.

Third, the cases cited by REV repeatedly strike down expert opinions that do not allow the trier of fact to adjust the amount of damages in any way. *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983)("the jury was left with no way to adjust the amount of damages to reflect lawful competition from AT&T"); *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. Appx. 267, at 271 ("Implicitly, the jury had no reasonable method to dissect the report and assess what acts may have caused particular losses"); *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 U.S. Dist. LEXIS 147633, *60 (E.D.N.C. 2011)(citing *Pharmanetics*, 2005 U.S. Dist. LEXIS 45768, at *10 ("As [the expert's] damages model is premised upon plaintiff's success on all of its causes of action, and does not allow, even in the alternative, for an adjustment of damages to account for those claims no longer remaining, it is not a reliable measure of damages.")).

When proposed expert testimony pertains to damages, the testimony should be excluded when it "consists of an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it." *Polyzen, Inc. v. Radiadyne, LLC*, 2016 U.S. Dist. LEXIS 130888, *33-34 (E.D.N.C.

2016)(citing *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 145 (4th Cir. 1994)(quotations and citations omitted)). Quite the opposite is true here.

As outlined above, Mr. Bailey did provide a way for the jury to adjust both the repair estimate damages and diminished value damages if the jury finds that REV's warranty did not fail of the essential purpose, did not cover all of the subject RV's defects, or that any of the defects should not be considered in reaching a number for damages for any other reason. Therefore, Mr. Bailey's assessment of damages for breach of warranty is appropriate, expecting an expert to provide opinions on damages for each separate defect in a breach of warranty case is completely absurd, and the cases cited by Defendant completely miss the mark.

Alternatively, even if Mr. Bailey's opinions are not admissible, REV's arguments still fail because the Mathews' opinions regarding the diminished value of the RV are also admissible. In determining the diminished value of an RV, the owner of the RV is qualified to give an opinion as to the fair market value of the RV. See *M.W. v. State*, 2008 Ind. App. Unpub. LEXIS 2468, *6 (Ind. Ct. App. 2008); *Charlie Stuart Oldsmobile, Inc. v. Smith*, 171 Ind. App. 315, 323-324 (Ind. Ct. App. 1976); *Carpetland USA v Payne*, 536 N.E.2d 306 (Ind. Ct. App. 1989); *Don Medow Motors, Inc. v. Grauman*, 446 N.E.2d 651 (Ind. Ct. App. 1983).

Here, it is the opinion of both named Plaintiffs that the RV's diminished value is the full cost of the RV itself, e.g. it was worth nothing to them at all in light of its defects. See Aff. R. Mathews, ¶23 (Doc. 37-1; Appx. P56); Aff. V. Mathews, ¶5 (Doc. 37-13). While REV takes issue with Mr. Mathews' opinion, his opinion was certainly disclosed his change of opinion by affidavit when it occurred, and Mrs. Mathews was never even

asked if she had an opinion on the issue.

Thus, for the reasons outlined above, Mr. Bailey's, Mrs. Matthews' and Mr. Matthews' opinions regarding the amount of damages for breach of warranty are all acceptable methods for calculating damages for breach of warranty under Indiana law.

### B. Reasonable minds could conclude that REV breached its implied warranties under state law

At pages 31-36 of its brief, REV argues that REV did not breach its implied warranty of merchantability as a matter of law. In support of this argument, REV makes multiple arguments which are based on false information and therefore fail.

First, REV claims that none of the unrepaired defects were presented for repair to REV during the warranty period. This is simply false. REV attempted to repair the following defects at its factory, and none of them were ever repaired: DVD player does not work (December 2014), bedroom TV not working (December 2014), slide out seals coming loose and failing (December 2014 and May 2015), and A/C not keeping up (May 2015). Repair Order (Doc. 37-8); Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶12, 17, 20 (Doc. 37-1; Appx. P53-54, 55, 56); Defect Report, P4-6, P22 (Doc. 37-13, Ex. 2A).

Second, REV claims that it never extended the warranty, but instead provided a "goodwill coverage policy". However, this is not true. REV actually agreed to extend the warranty itself twice during two separate telephone conversations with Mr. Mathews. See Aff. R. Mathews, ¶11, 15 (Doc. 37-1; Appx. P53, 55).

Third, REV claims at page 33 that the Mathews have never asserted that they discovered the A/C will not keep up defect before the REV warranty expired. Again, this

is not true. The A/C failing to keep up was subject to repair at the REV factory in May 2015. Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶17 (Doc. 37-1; Appx. P55). Moreover, the A/C failing to keep up is caused by the failing seals, which were subject to repair by REV at its factory in December 2014 and May 2015. Defect Report, P4-6, P22 (Doc. 37-13, Ex. 2A); Repair Order (Doc. 37-8); Second Repair Orders (Doc. 37-11); Aff. R. Mathews, ¶12, 17, 20 (Doc. 37-1; Appx. P53-54, 55, 56).

Fourth, REV claims that a latent defect cannot establish a breach of implied warranty. However, REV is mistaken. As outlined above, a latent defect can also cause a breach of implied warranty of merchantability. See *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285 (Ct. App. 2009). Here, based upon the evidence before the District Court, reasonable minds could conclude that the latent water tank defect resulted in a breach of REV's implied warranty of merchantability.

Finally, REV claims that the Mathews made a new argument in their merit brief "that REV breached the implied warranty of merchantability, even if the duration of the implied warranty was appropriately limited". However, yet again, REV is mistaken. Instead, at pages 22-23 of their memorandum in opposition, the Mathews argued that REV breached its implied warranty of merchantability without reference to its duration, and at page 23, argued that the warranty was breached at the time of purchase.

<u>C.</u> <u>Reasonable minds could conclude that REV breached its express and implied warranties under the Magnuson Moss Warranty Act</u>

Thirteenth, at pages 37-38 of its brief, REV argues that REV did not violate the MMWA as a matter of law because it did not breach any warranties as a matter of law. However, as outlined above and in the Mathews' merit brief, REV breached its warranty

under both state and federal law.

D. Reasonable minds could conclude that the Mathews were not required to avail themselves of the back-up remedy in REV's Warranty

Curiously, although REV claims that this issue was not integral to any part of the District Court's decision (it clearly was), REV argues at pages 24-25 and 39-48 of its brief that the Mathews' claims fail because they failed to avail themselves of the Back-Up Remedy. Each and every argument fails.

First, REV argues that despite the plain reading of I.C. 26-1-2-719(2) and settled case law, its warranty cannot fail of its essential purpose unless the Mathews first avail themselves of the back-up remedy because its warranty is "unlike other limited warranties". However, it is well settled that a limited warranty fails of its essential purpose where attempted repairs fail to correct the problem or fails to perform repairs in a reasonable amount of time. *Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, 2010 U.S. Dist. LEXIS 103405, *18 (N.D. Ind. 2010); *Cimino*, 542 F.Supp.2d at 887; *Perry*, 814 N.E.2d at 642-643.

Second, REV spends pages of its brief attempting to distinguish cases cited by the Mathews. However, each and every case is applicable and on point, and REV's attempts to distinguish are ineffectual.

Third, REV claims that the Mathews waived their argument that there was no meeting of the minds under I.C. 26-1-2-719(1)(b). However, REV's argument is disingenuous at best. In their brief in opposition, the Mathews specifically cited to I.C. 26-1-2-719(1)(b)'s limitation on sole remedies at page 15 (Doc. 37, Short Record pg 5) as follows:

> As noted by Official Comment 2 to IC 1971, 26-1-2-719 subsection (1)(b), creates a presumption that clauses prescribing remedies are cumulative rather than exclusive. Thus, "unless the parties intend the terms to describe the sole remedy under the contract and such is clearly expressed therein other remedies are still available." *Richards v. Goerg Boat & Motors, Inc.*, (1979) 179 Ind. App. 102, 122. In this case, there could be no such intention, e.g. a meeting of the minds, because Plaintiffs never received the Defendant's warranty document until March 2015, nearly a year after the purchase.

The Mathews picked up on that argument as it applied to the back-up remedy at pages 20-21 arguing that they were not required to avail themselves of the back-up remedy because there was no meeting of the minds, e.g. Plaintiffs never received the Defendant's warranty document until March 2015 (Doc. 37, Short Record pg 5). Although the Mathews did not specifically cite to I.C. 26-1-2-719(1)(b) again at pages 20-21, the argument was clearly one in the same. As such, REV's argument fails.

Fourth, REV argues that the Mathews waived the following additional arguments by failing to specifically raise them before the District Court: (4) the Mathews substantially complied with the REV Warranty, and (5) REV's back-up remedy failed to provide the Mathews with a fair quantum of remedy. However, as outlined below, the Mathews did not waive the arguments and REV's argument fails.

Where a party asserts the factual reasons why summary judgment should not be granted before the District Court, an argument is not waived for purposes of appeal. *Winter v. Minnesota Mut. Life Ins. Co.*, 199 F.3d 399, 411, fn. 17 (7th Cir. 1999); *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718 (7th Cir. 2008)(holding the appellate court may consider new arguments on appeal in cases where justice demands more flexibility). Here, the Mathews raised all facts which are the basis for their arguments regarding substantial compliance and fair quantum of remedy before

the District Court. As such, the Mathews did not waive those arguments for the purposes of appeal.

E. Reasonable minds could conclude that REV violated the Indiana, Virginia, or Pennsylvania UDAP laws

At pages 48-49 of its brief, REV argues that the District Court properly determined that REV did not violate the Indiana Deceptive Consumer Sales Act as a matter of law. REV essentially argues that neither the Mathews' Complaint nor their response to discovery requests form a basis for a deceptive act under either Indiana's, Virginia's, or Pennsylvania's UDAP statutes. However, this is not the case.

REV only moved for summary judgment on the Virginia and Pennsylvania UDAP laws. REV Motion for Summary Judgment, ¶2 (Doc. 29, Short Record P4); REV Brief in Support, P21-22 (Doc. 30, Short Record P5). Ultimately, however, the District Court determined that the Indiana UDAP applied. Opinion and Order Granting REV's Motion for Summary Judgment pg 33 (Doc 44; Appx. P1, at P33; Short Record pg 41). Regardless of the state law applied, reasonable minds could conclude that Defendant violated the Virginia Consumer Protection Act ("VCPA") and/or the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) and/or the Indiana Deceptive Consumer Sales Act ("IDCSA") in dealing with the Mathews regarding the defective RV.

The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud. *Ballagh v. Fauber Enters.*, 290 Va. 120, 124-125 (Va. 2015). The prohibited practices under the VCPA are set forth in § 59.1-200 and 59.1-200.1, Code of Virginia. *Id.* A consumer plaintiff must establish the following elements under the VCPA: (1) the defendant is a "supplier", (2) the purchase of the RV was a "consumer

transaction", and (3) Defendant committed a prohibited act under Va. Code 59.1-200(A). See Va. Code 59.1-200(A); Va. Code § 59.1-198.

Pursuant to Va. Code 59.1-200(A), the following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are unlawful:

> ***
> 5. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;
> 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;
> ***
> 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction;
> ***
> 17. If a supplier enters into a written agreement with a consumer to resolve a dispute that arises in connection with a consumer transaction, failing to adhere to the terms and conditions of such an agreement;

Pursuant to 73 Pa. Stat. § 201-3 of the UTPCPL, unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. And, 73 Pa. Stat. § 201-2(4) outlines specific acts or practices which are statutorily unfair or deceptive, including:

> ***
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> ***
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> ***
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
> (xv) Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;
> (xvi) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;

> ***
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

The IDCSA is a remedial statute designed to "provide remedies to consumers . . . for practices that the General Assembly deemed deceptive in consumer transactions." *McKinney v. State*, 693 N.E.2d 65, 67 (Ind. 1998). The IDCSA is to be liberally construed to protect the consumer. I.C. 24-5-0.5-1(a). And, if a supplier engages in "deceptive acts" before, during, or **<u>after</u>**, a consumer may file suit pursuant to the IDCSA. *Perry*, 814 N.E.2d at 646; I.C. 24-5-0.5-3(a).

Pursuant to I.C. 24-5-0.5-3(a), a supplier's deceptive acts, which can be made orally, in writing, or by electronic communication, include, but are not limited to, the following:

> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.
> (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.
> (8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.

Additionally, a breach of warranty or misrepresentation regarding the quality of a vehicle can be a violation of the IDCSA where it rises beyond "mere puffing". *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013).

Here, REV argues only that the Mathews cannot establish that it committed an act in violation of any of the above statutes. However, reasonable minds could conclude that REV committed one or more acts or practices in violation of one or all of the above

UDAP laws when it did the following acts: (1) attempted to unconscionably limit its express warranty, (2) failed to make a copy of its express warranty available to Plaintiffs prior to their purchase of the RV, (3) failed to provide Plaintiffs with a local authorized dealer, (4) delivered an RV to Plaintiffs that contained a latent defect in the fresh water tank support system, (5) delivered an RV to Plaintiffs that was and is now uninhabitable at the time of delivery because the improper slide out fit and failing slide out seals do not allow the A/C (or the heater) to reach or sustain comfortable temperatures, (6) failed to repair the RV's defects in a reasonable amount of time or a reasonable number of repair attempts, and/or (7) failed to deliver to Plaintiffs an RV that was fit for its ordinary use.

Notwithstanding, REV argues that the Mathews failed to put it on notice of the above acts. However, REV was put on notice of each and every one of its above acts either by the Amended Complaint (Doc. 21, Short Record pg 4), the Pre-Suit Letter (Doc. 30-9), or the deposition of Mr. Mathews (Doc 37-14). As such, REV's argument fails and reasonable minds could conclude that Defendant violated the VCPA and/or the UTPCPL and/or the IDCSA in dealing with Plaintiffs regarding the defective RV.

## IV. Conclusion

The Mathews respectfully request that this Court reverse the district court's grant of summary judgment on all issues and all claims, and remand the case back to the district court for scheduling on the district court's trial calendar.

Respectfully submitted,

/s/ Elizabeth Ahern Wells
ELIZABETH AHERN WELLS
Attorney for Plaintiffs-Appellants
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone: 937.432.9500
Facsimile: 937.432.9503
Email: Beth@Burdgelaw.com

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(A) and the word limit of Fed. R. App. P. 32(a)(7)(B)(I) and Cir. R. 32 because, excluding the parts of the document exempt by Fed. R. App. P. 32(f), this document contains less than 7,000 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and Cir. R. 32 because this document has been prepared in proportionally spaced typeface using WordPerfect X8 2016 with Georgia font, size 12 font.

Respectfully submitted,

/s/ Elizabeth Ahern Wells
ELIZABETH AHERN WELLS
Attorney for Plaintiffs-Appellants
8250 Washington Village Dr.
Dayton, Ohio 45458
Telephone: 937.432.9500
Facsimile: 937.432.9503
Email: Beth@Burdgelaw.com

Dated: March 6, 2019

## CERTIFICATION

A copy of the foregoing was filed electronically on March 6, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Elizabeth Ahern Wells
ELIZABETH AHERN WELLS